IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JIMMIE EARL GAMBLE, #1384322 | § | |
| VS. | § | CIVIL ACTION NO. 6:08cv410 |
| DIRECTOR, TDCJ-CID | § | |

## **MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Petitioner Jimmie Earl Gamble ("Gamble" or "Petitioner"), an inmate confined in the Texas prison system, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 29 U.S.C. § 2254. The parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. § 636(c).

## **PROCEDURAL BACKGROUND**

Gamble was convicted on June 22, 2006, of burglary of habitation. The jury made an affirmative prior conviction enhancement finding and sentenced Gamble to life imprisonment. *See* Tex. Penal Code § 30.02. Jurisdiction is based on Gamble's county of conviction, Smith County, in the Eastern District of Texas, Tyler Division. *See* 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir.2000) (jurisdiction is proper in either the county of conviction or the county of confinement). Gamble now challenges this conviction.

Gamble maintained the same counsel for appeal, who submitted a brief on appeal pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) and *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App.1969), after which Gamble filed a *pro se* brief. His conviction was affirmed by the Twelfth Court of Appeals on June 29, 2007. *Gamble v. State*, 2007 WL 1868677 (Tex. App. - Tyler June 29, 2007), *no pet.*

Gamble filed a state petition for writ of habeas corpus on October 31, 2007. *Ex parte Gamble*, at 1. This application was denied without written order on February 13, 2008. *Id.* at cover.

1

Gamble filed the instant Petition with supporting Memorandum on July 17, 2008.

## PETITIONER'S CLAIMS

Petitioner raises the following claims:

1. Ineffective assistance of trial counsel for:

   a. Failure to object at the guilt phase to: (1) alleged prosecutorial misconduct including repeated and inflammatory use of the word "terrorize" during closing argument; (2) repeated inappropriate reference to "rabbit trails and smoke screens" during closing argument; and (3) surreptitious reference during closing argument to Gamble not testifying at trial.

   b. Failure to investigate character witnesses at the punishment phase.

   c. Failure to interview jurors regarding whether they had impermissibly discussed the possibility of Gamble's parole.

2. Ineffective assistance of counsel on appeal due to a conflict of interest because she was also Petitioner's trial counsel and filed an *Anders* brief on appeal.

3. Insufficient evidence to support Gamble's conviction.[1]

## FACTUAL BACKGROUND

The Opinion of the Twelfth Court of Appeals did not include a statement of factual background. This Court has compiled the following facts from the record:

At trial, victim Glenn Justice testified that he lives in an apartment at 421 West Woldert Street, Tyler, Texas. Between 8:00 and 8:30 a.m. on December 5, 2005, as Justice was asleep in his apartment, he awoke to a very hard, loud knocking on his door, lasting five minutes or more. He

---

[1] Entitled as "No Evidence to Support Conviction by Coercing the Witness for the State." Petition at 7; Memorandum at 4. However, Gambles explains that "[t]he evidence is legally insufficient, because of the witnesses [sic] false testimony." Memorandum at 4. Therefore, his claim is for "insufficient evidence," not "no evidence." In any event, a claim of "no evidence" is essentially the same as one of "insufficient evidence," both of which are reviewed under the same standard of review. *Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002), *vacated on other grounds*, 541 U.S. 386, 396, 124 S. Ct. 1847, 158 L. Ed. 2d (2004); *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991).

could see that the door was being pushed from the other side and the doorknob was being twisted back and forth. Justice called the police; while he was on the phone, an individual entered his apartment by shouldering in the door, destroying its lock and causing it to fly across the room. The individual was not wearing a mask or any kind of covering over his face. Justice identified the Petitioner, Gamble, in open court as the individual who broke into his apartment. He testified that he had seen Gamble "in passing" in his neighborhood a few days before. Justice testified that Gamble was in a "real serious rage," moving and throwing things around inside the apartment. Gamble was shouting and demanding to know where "the money" was. Justice showed him his billfold. Gamble took Justice's money out of the billfold and left the apartment. Altogether, Justice testified that Gamble took $125 from Justice, in the form of one $100 bill, one $20 bill and one $5 bill. Justice was on the phone to 911 throughout the incident. On re-direct, Justice identified a tape of his 911 conversation and further identified the three voices on the tape as himself, the burglar in his apartment and the 911 operator.

Tyler Police Officer William Horton testified that between 8:00 and 8:30 a.m. on December 5, 2005, he was on patrol in northeast Tyler when he was contacted by the police dispatcher who directed him to Justice's address in response to Justice's 911 call. As he pulled into Justice's driveway, he observed a black male wearing a red jacket walk away from the driveway. Dispatch then provided Officer Horton with a description of a suspect, including that the suspect was black and wearing a red jacket. Officer Horton turned his patrol car around to catch up to the individual about a block and a half away. When he caught up, Officer Horton engaged the individual in conversation and learned his name was Jimmy[2] Earl Gamble. Officer Horton identified Gamble in open court as the individual he intercepted on December 5, 2005. Officer Horton did not arrest Gamble at that time, but asked him if Gamble would accompany him back to Justice's apartment. Gamble agreed and rode in Officer Horton's patrol car back to the apartment. On arrival, Officer

---

[2] The trial transcript and trial documents refer to Gamble's first name as "Jimmy." In his instant habeas petition and associated filings, Gamble refers to his first name as "Jimmie."

Horton left Gamble in the car and went up to the apartment, observing that its front door had been broken in, inconsistent with a consensual entry. At the scene, Officer Horton met Officer Tom Whitworth and Sergeant John Brown of the Tyler Police Department. Officer Whitworth had interviewed Justice. Gamble told Officer Horton that the door had not been damaged when he arrived at the apartment and that he had been in the residence with Justice's consent. He said he had left a can of Sprite soda in the apartment, but Officer Horton's search revealed no such can in the apartment. After conferring with Office Whitworth, Officer Horton placed Gamble under arrest and searched him. He found $125 in his front left pants pocket, in the denominations of one $100 bill, one $20 bill and one $5 bill. Officer Horton learned that those were the denominations that Justice reported stolen from him.

Officer Thomas Whitworth of the Tyler Police Department testified that he went to Justice's address the morning of December 5, 2005, in response to a burglary-in-progress dispatch. There, he observed that the door to Justice's apartment had been broken in and interviewed Justice, who he described as quiet but upset. During the interview, Officer Horton arrived at the apartment with Gamble in his car. Justice went downstairs and identified Gamble as the individual who broke into his apartment.

After recalling Glenn Justice and Officer Horton for brief additional testimony, the State and Gamble both rested, the trial court gave the jury charge and counsel presented their respective closing arguments. The jury then found Gamble guilty of the count of burglary of a habitation. After a trial on punishment, the jury found true the two allegations of enhancement contained in the indictment and assessed Gamble's punishment at life imprisonment without a fine.

## **STANDARDS AND DISCUSSION**

Title 28 U.S.C. § 2254(d) dictates a highly deferential standard for evaluating state-court rulings. *Bell v. Cone*, 535 U.S. 685 (2005). State courts are presumed to know and follow the law. *Id*. State court factual findings are presumed to be correct, and the petitioner bears the burden of rebutting this presumption "by clear, convincing evidence to the contrary." *Hogues v. Quarterman*, 312 Fed. Appx. 684, 686 (5th Cir.) (quoting *Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir.2005),

4

*cert. denied* 546 U.S. 1098, 126 S. Ct. 1028, 163 L. Ed. 2d 868 (2006)), *cert. denied*, 130 S. Ct. 373, 175 L. Ed. 2d 143 (2009) ; 28 U.S.C. § 2254(e)(1).

The Texas Court of Criminal Appeals already has denied Gamble's claims; consequently, Petitioner cannot obtain federal habeas corpus relief unless he can show that the state court's adjudication of those claims either resulted in a decision that was contrary to established federal law (*see Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir.), *cert. denied* 537 U.S. 953, 123 S. Ct. 420, 154 L. Ed. 2d 300 (2002); 28 U.S.C. § 2254(d)(1)) or resulted in a decision based on an unreasonable determination of the facts (*see Riddle*, 288 F.3d at 716; 28 U.S.C. § 2254(d)(2)). "A state court's decision is deemed 'contrary to' clearly established federal law if it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (quoting *Murphy*, 416 F.3d at 431-32). "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable." *Id*. (same). Thus, the unreasonable application clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Brown v. Payton*, 544 U.S. 133, 147, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005). The habeas petitioner has the burden of showing that the state court applied the law to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 25, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002); *see also*, *Price v. Vincent*, 538 U.S. 634, 641 (2003).

Factual determinations underlying the Texas Court of Criminal Appeals's adjudication are entitled to a presumption of correctness which must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e). A petitioner seeking habeas relief pursuant to 28 U.S.C. § 2254 must plead facts in support of his claims. Rule 2(c). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, in state and federal court, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir.1988); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir.1983) (cited in *Murphy*, 416 F.3d at 437).

## Unexhausted Claim - Sufficiency of the Evidence

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights. *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); 28 U.S.C. § 2254(b)(1)(A). Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the district court cannot grant habeas relief unless the applicant has exhausted available state court remedies. 28 U.S.C. § 2254(b)(1)(A). *Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir.2005). To satisfy the exhaustion requirement of 2254(b)(1), a habeas petitioner must have fairly presented the substance of his claims to the state courts. *Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2005); *Jones v. Dretke*, 375 F.3d 352, 354 (5th Cir.2004), *cert. denied* 543 U.S. 1060, 125 S. Ct. 878, 160 L. Ed. 2d 788 (2005).

To fairly present all his claims to the state court, a petitioner must have informed the state court system of the same facts, *Picard v. Connor*, 404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1981); *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir.2004), *cert. denied* 543 U.S. 989, 125 S. Ct. 498, 160 L. Ed. 2d 374), and legal theories, *Gray v. Netherland*, 518 U.S. 152, 163, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); *Bagwell*, 372 F.3d at 755, on which he bases his assertions in his federal habeas petition. It is insufficient that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. *Anderson v. Harless*, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Bagwell*, 372 F.3d at 755. The state court must have been apprised of all the facts, *Picard,* 404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438; *Bagwell*, 372 F.3d at 755, and legal theories. *Gray*, 518 U.S. at 163; *Bagwell*, 372 F.3d at 755, on which the petitioner bases his assertions. A petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. *Bagwell*, 372 F.3d at755.

Under Texas law, sufficiency of the evidence may only be raised on direct appeal, and is not cognizable in state habeas proceedings. *Ex parte Santana*, 227 S.W.3d 700, 705 (Tex. Crim App. 2007); *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Therefore, unless the petitioner raises the claim in a petition for discretionary review, he fails to exhaust his claim, and

federal review is barred unless the petitioner can show either cause and prejudice from the procedural default or that failure to review the claim would result in a complete miscarriage of justice due his actual innocence. *Haley* 306 F.3d at 264; *Renz v. Scott*, 28 F.3d 431, 432-33 (5th Cir. 1994). Here, Gamble did not raise on direct appeal the sufficiency of the evidence claim, but did raise it in his state habeas writ, which was denied without written order.[3] The Texas Court of Criminal Appeals has expressly ruled that denial without written order of a state habeas application challenging sufficiency of the evidence means that the claim is not cognizable. *Ex parte Grigsby*, 137 S.W.3d at 674. Therefore, his instant federal claim is barred unless he can show either cause and prejudice from the procedural default or that failure to review the claim would result in a complete miscarriage of justice due his actual innocence. Petitioner has not attempted to show cause and prejudice from the procedural default and has not shown that failure to review the claim would result in a complete miscarriage of justice due to his actual innocence. Petitioner's claim is procedurally defaulted.

### Exhausted Claims - Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief must show that his attorney's performance was deficient and that the deficiency prejudiced him to the point that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 678, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This means that the habeas petitioner must establish

---

[3] In his state habeas application, Gamble entitled this claim as "No Evidence to Support Conviction," as he did in his federal claim. A true "no evidence" claim is cognizable on a Texas state habeas application. *Ex parte Barfield*, 697 S.W.2d 420, 421 (Tex. Crim App. 1985). However, Gamble clarified that his actual state claim was that Justice's testimony was false and impeached on cross-examination, and was therefore insufficient to support his conviction. *Ex parte Gamble* at 7. Notwithstanding the title of Gamble's claim, trial testimony consisted of Justice's testimony as well as that of two responding Tyler police officers. That certainly constituted evidence presented to support his conviction. Furthermore, under the same title of "no evidence" in his federal claim, Gamble explicitly explained that his claim was actually one of "insufficient evidence." *See* Memorandum at 4, *supra*. The Respondent asserts that where such evidentiary support for a conviction exists, the Texas Court of Appeals construes a claim of "no evidence" as one for "insufficient evidence," citing *Ex parte Williams*, 703 S.W.2d 674, 679-80 (Tex. Crim App. 1986) (where evidence exists in record to support verdict, a "no evidence" claim is in actuality an "insufficient evidence" claim, which is not cognizable in a Texas state habeas application). *See* Respondent's Brief at 3 n.2. Gamble does not object to that construction, nor has he asserted otherwise. This Court agrees with the Respondent and views the Texas Court of Criminal Appeals's denial of Gamble's state habeas application accordingly.

both that (1) counsel's performance was deficient in that it fell below an objective standard of reasonable competence and (2) the deficient performance so prejudiced the defense that the outcome of the trial was unreliable and there is a reasonable probability that, but for counsel's performance, the result of the trial would have been different. Unless a petitioner makes both showings, he is not entitled to relief. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir.1988). The burden of proving ineffective assistance of counsel is on the petitioner. *Hayes v. Maggio*, 699 F.2d 198, 201 (5th Cir.1983).

In addition, the petitioner has the burden of identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 466 U.S. at 694; *Jones v. Butler*, 864 F.2d 348 (5th Cir.1988), *cert. denied* 490 U.S. 1075, 109 S. Ct. 2090, 104 L. Ed .2d 653 (1989). General statements and conclusory charges of ineffectiveness will not suffice. *Green v. McGougan*, 744 F.2d 1189, 1191 (5th Cir.1984).

Gamble presented each of his ineffective assistance of counsel claims to the Texas Court of Criminal Appeals in his state habeas application. Therefore, he has exhausted those claims.

### A. Ineffective Assistance of Trial Counsel

### 1. Failure to Object Claims

During closing argument, the prosecutor summarized the evidence presented at trial. In part, he argued, ". . . no one should be terrorized in their own home. [ ] Unfortunately, December 5th, 2005, here in Smith County, Texas, Glenn Justice was terrorized in his own home." Vol. 4 Reporter's Record ("4 RR") 86:12-16. Later, he argued, "[t]hat's the man that came busting through that man's door, Mr. Justice's door, and terrorized him on the morning of December 5th, 2005. He chose - - when I say 'he,' Mr. Gamble chose to disregard what we would all consider as mere decency to not terrorize someone in their own home." 4 RR 86:21-87:01. Finally, "[w]hile [Justice] was on the phone, that man was in his house, in Mr. Justice's house, terrorizing him and stealing his property." 4 RR 87:05-08.

In addition, after defense counsel's closing, the prosecutor responded, ". . . everything you just heard was nothing more than a smoke screen, nothing more than a bunch of little rabbit trails

for you to go back in there and chase so you'll forget what is at issue in this case and the uncontroverted evidence in this case." 4 RR 96:16-20. Arguing that defense counsel had raised nothing to contradict Justice's identification of Petitioner, the prosecutor stated, "[j]ust a bunch of rabbit trails and smoke screen so that you'll forget that." 4 RR 97:17-18. Finally, "[a]nd that's what all those rabbit trails were." 4 RR 100:07-08.

Gamble contends that both of these statements were prejudicial and impermissible, and that trial counsel was ineffective for failing to object to them.

The Fifth Circuit has stated that in federal habeas actions, improper jury argument by the state does not present a claim of constitutional magnitude unless it is so prejudicial that the petitioner's state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment's Due Process Clause. *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that, in probability, but for the remarks no conviction would have occurred. *Felde*, 795 F.2d at 403 (citing *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir.1983)).

The Supreme Court has stated that a prosecutor's remarks must be more than undesirable or even universally condemnable before reversal is warranted. Instead, the prosecutor's remarks must infect the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *see also Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir.), *cert. denied* 484 U.S. 933, 108 S. Ct. 310, 98 L. Ed. 2d 268 (1987); *Drew v. Collins*, 964 F.2d 411, 417 (5th Cir. 1992).

Here, in both instances, the prosecutor made a fair argument to the jury on the evidence presented. He did not mischaracterize any of the testimony presented during trial. Justice explicitly testified that he "was in fear of [his] life." 4 RR 24:07. Therefore, describing Gamble's breaking down Justice's door in a rage and demanding money "terrorizing" is hardly a stretch, much less inflammatory or prejudicial.

9

Neither did the prosecutor call Gamble's case a "falsehood or sham" by referring to defense counsel's arguments as rabbit trails and smoke screens, as Gamble claims. The prosecutor merely argued that defense counsel's argument in closing was intended to turn the jury's attention away from the evidence adduced by the prosecution. In any event, Gamble has made no showing that no conviction would have occurred absent the prosecution's remarks. *Felde*, 795 F.2d at 403. Therefore, he can show no prejudice by his counsel's failure to object to them, and these ineffective assistance claims have no merit. *Lavernia*, 845 F.2d at 498.

Gamble also contends that his counsel was ineffective for failing to object to the prosecution's "surreptitious" reference to the jury about Gamble's refusing to testify. At the end of his closing argument, the prosecutor again responded to defense counsel's closing argument:

| | |
|---|---|
| Prosecutor: | You know what else you could have heard? He's inconsistent. Inconsistent. Did you ever hear anything from him, the defense counsel, to say anything to show why he would be here lying? |
| Defense: | Your Honor, I'm going to object as to that argument. I don't have to prove - |
| The Court: | Court sustains the objection. |
| Defense: | Ask the jury to disregard. |
| The Court: | Jury be instructed to disregard the last portion of the closing argument. |

4 RR 100:14-23. First, the prosecutor did not allude to Gamble's refusal to testify. Instead, a fair reading was that he referred to defense counsel's argument, asserting that it presented no showing to the jury that the victim, Justice, had been lying. Second, Gamble's trial counsel clearly did object to the prosecutor's argument and was sustained by the trial court with a curative instruction. Again, Gamble has not shown that trial counsel's performance fell below an objective standard of reasonable competence or that he was prejudiced by it. *Lavernia*, 845 F.2d at 498.

### 2. Failure to Investigate Character Witnesses

Gamble next claims that counsel was ineffective for not investigating three individuals who may have testified as character witnesses on his behalf at the punishment or sentencing phase. Although he names his employer John Soules, his pastor Rev. Refus Pollard and a mentor, Mike

Simpson, he does not show what their testimony would have been, that it would have been favorable, or that any of them would actually have testified. *Gregory v. Thaler*, - - - F.3d - - - -, 2010 WL 1010598, at *4 (5th Cir. Mar. 22, 2010) ("To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable.") (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Furthermore, "[c]laims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the propose testimony." *Gregory*, 2010 WL 1010598, at *4 (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). Here, Gamble has submitted no affidavits indicating any putative character witness's willingness to testify; he has not shown or even made an unsupported claim as to what their testimony would have been; nor has he shown how it would have been favorable to him at sentencing. He simply asserts such testimony would have been "mitigating." That is merely "speculation[] as to what [uncalled] witnesses would have testified [and] is too uncertain." *Gregory*, 2010 WL 1010598, at *4 (quoting *Alexander*, 775 F.2d at 602) (bracketed word "uncalled" added in *Gregory*; other brackets added herein). This claim is also without merit.

### 3. Failure to Interview Jurors

During deliberations, the presiding juror sent a note to the trial judge asking, "Is there eligibility for parole with a life sentence?" With no objection by the prosecutor or defense counsel, the trial judge responded:

> Members of the jury, the Court has received your note. The answer to your question is that a defendant is eligible for parole consideration on a life sentence, as discussed in the Court's charge of the law in paragraph 16 on Page 11 and 12 of the charge.
>
> Please review the Court's charge of the law and the evidence in this case and continue your deliberations in this case.

5 RR 64:02-09. Based on this query, Gamble contends that trial counsel was ineffective for failing to interview individual jurors to determine whether they "engaged in the impermissible 'parole law'

11

discussion," citing *Tollett v. State*, 799 S.W.2d 256 (Tex. Crim App. 1990). However, he does not explain his contention. Further, he again cites no federal law in support of his claim, other than simply making a wholly conclusory assertion that he believes this Court "will find sufficient prejudice for reversal under the Two Prong Test of" *Strickland*. Memorandum at 3.

To the contrary, Gamble has made no showing of prejudice whatsoever. The trial judge's jury charge included an explanation of parole eligibility, with which defense counsel agreed. The charge further instructed:

> You may consider the existence of the parole law and good-conduct time. However, you are not to consider the extent to which good-conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

5 RR 45:15-20. A "jury is presumed to have followed the trial court's instruction prohibiting consideration of the extent to which good conduct time might be awarded to or forfeited by [petitioner]." *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002); *see also United States v. Skelton*, 514 F.3d 433, 446 (5th Cir.), *cert. denied*, 129 S. Ct. 102, 172 L. Ed. 2d (2008). Gamble makes no showing whatsoever that the jury did other than follow the trial judge's instructions; he simply speculates that the jury "may have" done so. That is too conclusory to support an ineffective assistance claim. *Green*, 744 F.2d at 1190. This claim also fails.

### B. Ineffective Assistance of Counsel on Appeal

The application of the *Strickland* standard means that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir.1991) (citing *Strickland*, 466 U.S. at 694). In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453. This standard has been affirmed by the Supreme Court. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find

arguable issues to appeal, and also show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Here, Gamble raises an issue in his Memorandum that is not the subject of a specific ground in his Petition. He claims his counsel on appeal, who was also his counsel at trial, was ineffective due to a conflict of interest because she submitted a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), having found no meritorious appealable issues. Gamble also raised this issue in both his direct appeal and state habeas application. In support of this claim, he cites *Chandler v. State*, 988 S.W.2d 827, 828 (Tex. App. - - Dallas 1999), *no pet.*, for the proposition that it is never appropriate for appointed appellate counsel who was also the appellant's trial counsel to file an *Anders* brief. However, he disregards that the Texas Court of Criminal Appeals, the highest criminal appellate authority in Texas, reviewed this claim and denied it, despite the Texas Court of Appeals's opinion in *Chandler*. *See Ex parte Gamble* at cover.

Furthermore, although he briefly cites *Smith v. Robbins*, 528 U.S. 259, *supra*, to perfunctorily claim prejudice, he has not shown that the outcome of his direct appeal would have been any different had his counsel on appeal filed an appellate brief on the merits. Indeed, he does not even address his counsel's reasons for not doing so. In an affidavit in response to Gamble's state habeas application, his counsel, Leslie McLean, made a sworn statement that:

> After a review of the record, I was unable to find an issue for appeal. Though I understand that during his testimony the complaining witness contradicted himself, in my opinion, given the current state of the law, there was sufficient evidence, both legal and factual, upon which a jury could render a verdict of guilty. There were, in my opinion, no errors committed which would give rise to an issue on appeal during the guilt/innocence phase of trial.
>
> With respect to punishment, in my opinion, there was evidence presented by the State upon which a jury could assess punishment within the punishment range for this offense.

13

Again, there were no issues for appeal relative to this phase of trial. *See Ex parte Gamble*, at 36. Gamble ignores Ms. McLean's affidavit. However, the Texas Court of Appeals reviewed her affidavit as well as Gamble's own *pro se* merits brief before rendering its decision. *See Gamble*, 2007 WL 1868677, at *1. He can hardly claim prejudice where he had the opportunity to have his claims heard on appeal. *Sharp*, 930 F.2d at 453. In any event, he does not seriously argue that the outcome would have been different had appellate counsel filed a merits brief.

Instead, Gamble seems to be arguing that the fact that the same counsel who represented him at trial and on appeal filed an *Anders* brief is *per se* unconstitutional. However, Petitioner has not cited any United States Supreme Court case establishing that appellate counsel who was also a petitioner's trial counsel may not file an *Anders* brief on appeal, nor has this Court found such a case. "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by th[e Supreme] Court." *Knowles v. Mirzayance*, --- U.S. ----, ----, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) (citation and quotation marks omitted); *Carey v. Musladin*, 549 U.S. 70 76-77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Thus, the Texas Court of Criminal Appeals's decision was not contrary to, or an unreasonable application of, clearly established federal law. This claim has no merit.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, this Court may *sua sponte* rule on a certificate of appealability because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court, and further briefing and argument on the very issues the court has just ruled on would be repetitious. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); 28

U.S.C. § 2253(c)(2). The petitioner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Webster*, 392 F.3d at 791; 28 U.S.C. § 2253(c)(2). In determining whether to grant a certificate of appealability, a court is limited to a threshold inquiry into the underlying merit of the petitioner's claims; this threshold inquiry does not require full consideration of the factual and legal bases adduced in support of the claims, but instead is based on an overview of the claims in the habeas petition and a general assessment of their merits. *Webster*, 392 F.3d at 791.

In cases where a district court rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000); *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir.2003), *cert. denied* 540 U.S. 956; *see also Houser v. Dretke*, 395 F.3d 560, 561 (5th Cir. 2004).

The petitioner's arguments ultimately must be assessed under the deferential standard required by 28 U.S.C. § 2254(d)(1): Relief may not be granted unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004); *Bagwell v. Dretke*, 372 F.3d 748, 753 (5th Cir.), *cert. denied* 543 U.S. 989, 125 S. Ct. 498, 160 L. Ed. 2d 374 (2004). A state court's decision is contrary to clearly established Federal law, as determined by the Supreme Court of the United States if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. *Bagwell*, 372 F.3d at 753 n. 4. The Supreme Court has held that a certificate of appealability is a "jurisdictional prerequisite" and a court of appeals lacks jurisdiction to rule on the merits until a certificate of appealability has been issued. *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). In this case, reasonable jurists could neither debate nor find that the state court's decision was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States. *Id*. at 327. It is therefore

      **ORDERED** that the above-styled petition for writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. It is further

      **ORDERED** that all motions not previously ruled on are **DENIED**.

      So **ORDERED**.

      So **ORDERED** and **SIGNED** this **19** day of **April, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE